# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WANDA R.D. WILLIAMS, *et al.*, | : | No. 1:12-CV-1211 |
| | : | |
| Plaintiffs, | : | Hon. John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| GOVERNOR THOMAS W. CORBETT, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## **MEMORANDUM**

## **January 9, 2012**

Presently pending before the Court is the Motion to Dismiss (doc. 6) filed by Defendant Governor Thomas W. Corbett and Defendant William B. Lynch (collectively, "Defendants"). The Motion has been fully briefed by the parties (docs. 7, 15, 22) and the Court has accepted and considered the *amicus curiae* submission by Dauphin County. For the reasons fully articulated and set forth herein, the Court will grant the Motion and dismiss the Plaintiffs' Complaint in its entirety.

## I. INTRODUCTION

The factual background of this matter is well known to the Court and the public at large. Indeed, in a matter nearly identical to the case *sub judice*, decided

1

by this Court on May 2, 2012, we noted that the City of Harrisburg stands "on the verge of a debilitating financial collapse, burdened with well over $300 million in debt, and that it has already ceased payments on some of its obligations." *Harris v. Corbett*, No. 1:11-cv-2228, Doc. 59, p.1 (M.D. Pa. May 2, 2002). Much like that case, this matter has its origins in the City's financial woes, with the Plaintiffs seeking to challenge the constitutionality of Pennsylvania's Financially Distressed Municipalities Act, 53 P.S. § § 11701.101-.501.[1] Indeed, the case *sub judice* presents with a nearly identical legal and factual predicate to *Harris*, changed only by the passage of time and the plaintiffs identified in the caption. We thus derive the following history of Act 47 from our decision in *Harris*:

> The Financially Distressed Municipalities Act, 53 P.S. §§ 11701.101-.501 ("Act 47"), is a statutory mechanism by which a financially distressed municipality in Pennsylvania can request technical and financial assistance from the state government. On October 1, 2010, the City of Harrisburg filed an application with the Pennsylvania Department of Community and Economic Development ("DCED"), seeking a determination that the City was a "financially distressed municipality" and taking the first step toward entering the Act 47 program.

---

[1] The Plaintiffs here are Wanda R.D. Williams, Eugenia Smith, Brad Koplinski, Sandra R. Reid, and Susan Wilson-Brown, in their individual capacities and in their official capacities as elected members of the Harrisburg City Council; Daniel C. Miller, in his individual capacity and in his official capacity as the elected Controller for the City of Harrisburg; and John Campbell, in his individual capacity and in his official capacity as the elected Treasurer of the City of Harrisburg. The Defendants are Governor Thomas W. Corbett and Receiver William B. Lynch, both sued in their official capacities.

(Doc. 1, ¶ 25). On December 15, 2010, the DCED granted the City's application, designating Harrisburg as a financially distressed municipality and admitting the City into the Act 47 financial assistance program. (Id. ¶ 26). Under Act 47, as it then existed, the DCED or its designee would formulate a recovery plan and present it to the City; if the City refused to adopt the recovery plan, the state's financial assistance would simply end. (Id. ¶ 27). On July 19, 2011, the Harrisburg City Council rejected the Commonwealth's proposed recovery plan by a 4-3 vote. (*Id.* ¶ 43).

On October 10, 2011, Defendant Governor Corbett signed into law legislation amending Act 47 ("Act 47 Amendments" or "the Amendments"). The Act 47 Amendments altered Act 47 in several critical ways. Section 602(a) authorizes the Governor to designate financially distressed municipalities upon consideration of several statutorily-enumerated factors and, at his discretion, to make a declaration of fiscal emergency. *See* 53 P.S. § 11701.602(b) (as amended). Section 702 permits the Governor to "direct the secretary [of the DCED] to file a petition in [the] Commonwealth Court to appoint" a receiver to the financially distressed city. *Id.* § 11701.702(a). In such an event, the Act 47 Amendments authorize the Governor, or his designee, to collect funds on behalf of the city and its authorities, to obtain emergency financial aid, to enter into contracts and agreements on behalf of the city, and to exercise any other power necessary to "ensure the provision of vital and necessary services" to the city. *Id.* § 11701.604(a)(1)-(5). The Act 47 Amendments altered the term "vital and necessary services" to include fulfillment of payment of the city's debt or other financial obligations. *See* § 11701.601 (definitions).

On October 24, 2011, by the authority vested in him under Act 47, as amended, Defendant Governor Corbett

> executed a Declaration of Fiscal Emergency for the City of Harrisburg. (Doc. 1, Ex. 2). The Commonwealth Court, on petition and nomination of Defendant Governor Corbett, appointed Defendant David Unkovic ("Defendant Receiver") as the Act 47 receiver to the City, and on February 6, 2012, the Defendant Receiver filed his Recovery Plan with the Commonwealth Court. The Honorable Bonnie J. Leadbetter of the Commonwealth Court preliminarily approved the Recovery Plan by Order dated March 9, 2012.

*Harris*, No. 1:12-cv-1211, at 3-5.

Shortly thereafter, the *Harris* plaintiffs filed their Complaint and initiated that litigation, challenging the constitutionality of the Act 47 Amendments under the equal protection and due process clauses of the United States Constitution and the "special laws" proscription in the Pennsylvania Constitution. In *Harris*, we held that three citizens of Harrisburg lacked standing to bring suit challenging Act 47 because the harm suffered, if any, was felt by the City of Harrisburg itself and not by any individual person. The Plaintiffs here initiated this action on June 26, 2012, not long after our decision in *Harris*, contending that as members of the Harrisburg City Council and other elected City officials, they have suffered concrete and measurable injuries to their rights as elected officials, distinct from those of the general citizenry of Harrisburg, and that they thus have standing to proceed with the instant action. In essence, the Plaintiffs assert that the "Court asked for these plaintiffs in *Harris*, and so, here we are." (Doc. 15, p. 9).

On September 5, 2012, Defendants filed a Motion to Dismiss the Complaint and accompanying brief in support. (Docs. 6, 7). On September 19, 2012, Dauphin County filed, with the Court's consent, an *amicus curiae* brief in support of the Defendants' Motion. (Doc. 10). The Plaintiffs filed responsive papers on October 15, 2012, (doc. 15), and on October 31, 2012, the Defendants filed a reply brief. (Doc. 22). The Motion before the Court is thus fully ripe for our review.

## II.  STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that "raise a right to relief above the speculative level . . . ." *Victaulic Co. v. TIeman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Accordingly, to satisfy the plausibility standard, the complaint must indicate that defendant's liability is more than a "sheer possibility." *Iqbal*, 129 S. Ct. at 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later expounded upon and formalized in *Iqbal*, a district court must first identify all

factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a Rule 12(b)(6) motion to dismiss. *Iqbal*, 129 S. Ct. at 1950. Next, the district court must identify "the 'nub' of the . . . complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.* Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 556-57). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

### III. DISCUSSION

The Defendants raise a number of arguments in seeking dismissal of the Plaintiffs' Complaint. First, the Defendants assert that, to the extent the Plaintiffs bring claims in their official capacities as officers of the City of Harrisburg, their lawsuit is barred by the political subdivision standing doctrine. Second, insofar as the Plaintiffs' claims are raised in their individual capacities, the Defendants argue

7

that the lawsuit is barred for the same reasons this Court articulated in *Harris*—in essence, that the Plaintiffs assert a generalized grievance not cognizable by this Court. Third, the Defendants cite *Younger v. Harris*, 401 U.S. 37 (1971) and contend that *Younger* abstention encourages this Court to abstain from deciding this matter and defer to the ongoing proceedings before the Commonwealth Court. Additionally, *amicus curiae* Dauphin County submits that the Court should abstain from addressing the Pennsylvania state law claims pursuant to the abstention doctrine announced by the Supreme Court in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). As we did in deciding *Harris*, we will first address the parties' arguments with respect to threshold justiciability issues.

### A.    Does the Political Subdivision Standing Doctrine bar the Plaintiffs' Fourteenth Amendment claims?

We first consider the Defendants' assertion that the political subdivision standing doctrine precludes the Plaintiffs from bringing this lawsuit. As an initial matter, we are compelled to note that while the Plaintiffs, who as noted are a subset of the Harrisburg City Council as well as other City officers, purport to bring these claims in their official capacities on behalf of the City of Harrisburg, there is no evidence that they possess the authority to do so. It is patently evident that City Council simply could not muster a general consensus or resolve to bring suit challenging the Act 47 Amendments. However well-intentioned they may be, in

the absence of an official resolution bearing the imprimatur of the Harrisburg City Council or the Mayor, the Plaintiffs cannot launch freelance litigation on the City's behalf simply because they happen to be elected officials.[2]

Notwithstanding this apparent preclusion, the Plaintiffs' claims, even if properly brought on the City's behalf, are also barred by the political subdivision standing doctrine. This doctrine holds that a municipality, "created by a state for the better ordering of government, has no privileges or immunities under the Federal Constitution which it may invoke in opposition to the till of its creator." *Williams v. Mayor of Baltimore*, 289 U.S. 36, 40 (1933). This rule has been applied "equally to all political subdivisions of a state . . . and bars any alleged federal claim" against the state by any of its subdivisions. *See Cnty. of Lancaster v. Phila. Elec. Co.*, 386 F. Supp. 934, 940 (E.D. Pa. Jan. 3, 1975); *Nw. Sch. Dist. v. Pittenger*, 397 F. Supp. 975, *7-9 (W.D. Pa. June 16, 1975) (same); *see also Pocono Mt. Charter Sch. v. Pocono Mt. Sch. Dist.*, 2012 U.S. Dist. LEXIS 160109,

---

[2] It is evident that the Plaintiffs mistook our reference in *Harris* as an invitation to City Council members or other City officials to file suit. Our reference in *Harris* simply noted that the *Harris* plaintiffs had not established any individualized harms that had not been suffered by the general citizenry of Harrisburg and that the harm, if any, of Act 47 was felt by the municipality itself. Nothing in our *Harris* opinion supports the Plaintiffs' contention that a handful of members of the City Council, without authority to act on behalf of the Council, the Mayor, or the City, have standing to maintain this lawsuit. Plaintiffs' bald assertion that our previous mandate invited the instant challenge constitutes an erroneous extrapolation and misreading of *Harris*.

*45 (M.D. Pa. Nov. 8, 2012) (noting that "a creature of the state generally has no Fourteenth Amendment rights against its creator").[3]

Guided by this precedent, even if we were to find that the Plaintiffs' official capacity claims cloaked them with the authority to litigate on behalf of the City, we would nonetheless conclude that the political subdivision standing doctrine bars the Plaintiffs' claims. It is illogical to presume that an officer suing in an official capacity on behalf of a political subdivision might have greater standing to maintain a lawsuit than would the political subdivision that official represents. Assuming that the Plaintiffs had properly brought the Fourteenth Amendment claims on behalf of the City of Harrisburg, we nonetheless hold that the political subdivision standing doctrine bars such claims. We will thus grant the Defendants' Motion to the extent it seeks dismissal of the federal Equal Protection and Due Process claims brought by the Plaintiffs in their official capacities.

    **B.**    **Have the Plaintiffs established Article III standing for the Fourteenth Amendment claims raised in their individual capacities?**

---

[3] We are compelled to note that this bar has previously been applied to these very Plaintiffs in their attempted bankruptcy proceedings before Chief Bankruptcy Judge Mary D. France, who dismissed the City's Fourteenth Amendment claims, noting that the Political Subdivision Standing Doctrine bars the City from seeking the protections of the Fourteenth Amendment against the Commonwealth. *See In re City of Harrisburg*, 465 B.R. 744, 755 (Bkrtcy.M.D. Pa. Dec. 5, 2011).

Having dismissed the Plaintiffs' claims in their official capacities, we turn next to the question of whether the Plaintiffs have established standing in support of their individual claims. The Defendants contend that the Plaintiffs have neither alleged nor suffered any injuries in their personal capacities which confer Article III standing. Indeed, we have previously held, and again maintain, that the mere fact of citizenship in Harrisburg is insufficient to confer standing upon a party to challenge Act 47. *See generally Harris*, No. 1:11-cv-2228, Doc. 59, at 18-22. The Plaintiffs argue that the mandamus action filed on July 10, 2012 by the Defendant Receiver, expressly directed at forcing Plaintiffs Williams, Smith, Koplinski, Reid, and Wilson-Brown to take official action in compliance with the Act 47 Recovery Plan and threatening legal consequences for noncompliance, is a sufficient basis upon which to find that the Plaintiffs have standing in their personal capacities. (Doc. 15, p. 6). We conclude, for the reasons that follow, that this purported injury is insufficient to confer federal standing upon the Plaintiffs.

Foremost, we note that a factual allegation related to the mandamus action is not included in the Complaint and is thus not properly before the Court.[4] The

---

[4] Indeed, the harm allegedly flowing from the mandamus action could not have been averred in the Plaintiffs' Complaint because the mandamus action was not filed until after this action was commenced. The Plaintiffs' Complaint was filed on June 26, 2012. The mandamus action which allegedly establishes the Plaintiffs' right to bring this litigation was not commenced, by the Plaintiffs' own account, until July 10, 2012. Thus, at the time the Complaint was filed, any harm to the Plaintiffs was necessarily hypothetical at best.

11

Plaintiffs aver generally in their Complaint that their rights as "elected officials to represent the citizens of Harrisburg" are impaired by Act 47 and that this is sufficient to confer standing to the Plaintiffs in both their individual and official capacities. In response to the Defendants' Motion to Dismiss, the Plaintiffs assert more specifically that their injury is "obvious" in that the Defendant Receiver's mandamus action compels certain Plaintiffs, in their capacity as officers of the City, to take official actions on the City's behalf. (*See* Doc. 15, p. 15 ("Act 47 has been used by Defendant Lynch to compel [the Plaintiffs] to take official action as members of Harrisburg City Council that they have heretofore refused to take.")). We have above concluded that the Plaintiffs failed to properly bring a suit on behalf of the City and, further, that any such suit would necessarily be barred by the political subdivision standing doctrine. Accordingly, we are tasked only with considering whether this harm to the Plaintiffs' rights as elected officials is sufficient to confer individual standing to each of the Plaintiffs.

The Plaintiffs offer limited argument in support of their position, focusing their efforts instead on sweeping generalizations and lamentable personal attacks on defense counsel.[5] The only fact asserted in support of the Plaintiffs' standing

---

[5] As an example, instead of offering a cogent legal argument in response to the Defendants' standing arguments, the Plaintiffs assert repeatedly that defense counsel has "manufactured" the standing issues, that he has breached his "ethical obligation to refrain from making bad faith arguments to this Court," and that his conduct warrants sanctions without articulating or

argument is that "Act 47 has been used by Defendant Lynch to compel [the Plaintiffs] to take *official action as members of Harrisburg City Council* that they have heretofore refused to take." (Doc. 15, p. 8 (emphasis added)). The Plaintiffs maintain that the mandamus action in particular imposes legal obligations on them as officials of the City of Harrisburg (*id.* at pp. 8-9) and that they have suffered an "impairment of [their] rights as elected representatives to represent the citizens of Harrisburg." (Doc. 1, ¶ 83, 87).

This allegation might suffice to establish a concrete injury to the Plaintiffs in their official capacities because it asserts harms to the Plaintiffs in their roles as officers of the City and forces them to take action in that capacity. However, as we have above concluded, any suit brought by the Plaintiffs as officers of the City is necessarily precluded first by the Plaintiffs' failure to secure authorization to sue on behalf of the City and second by the political subdivision standing doctrine. The Plaintiffs have offered no argument supporting their contention that the Act's impact on their official roles confers standing in their *individual* capacities, and we can ascertain no independent basis to arrive at such a holding, especially in light of the absence of argument from the Plaintiffs on the point. The mandamus action,

---

substantiating any legitimate basis for such allegations. (Doc. 15, pp. 5-6, 8-10).

even if properly included in the Plaintiffs' Complaint, is thus insufficient to confer standing to the Plaintiffs in their individual capacities.[6]

Despite the dearth of argument from the Plaintiffs on this point, we have independently reviewed the remainder of the Complaint for facts which might confer standing to any or all of the individual Plaintiffs. Even under the deferential standard of review applicable to a motion to dismiss and assuming the truth of the Plaintiffs' every allegation, we cannot but conclude that the Plaintiffs' Complaint is entirely devoid of any allegation of individualized harm suffered by any of the Plaintiffs. Indeed, with the exception of identifying the parties in its introductory paragraphs, the Complaint is bereft of any reference to the Plaintiffs *at all*.

Faced with this patently deficient pleading, we are compelled to conclude that Plaintiffs lack standing to bring these Fourteenth Amendment claims. It is neither this Court's role nor its prerogative to speculate as to what injuries the Plaintiffs have suffered, and indeed, we are prohibited from doing so. To establish Article III standing, it is the Plaintiffs' responsibility to affirmatively establish that they have suffered an identifiable injury, either actual or imminent, that is concrete and particularized and neither conjectural nor hypothetical. *Storino v. Borough of*

---

[6] We note that mandamus action which the Plaintiffs contend establishes standing names only Plaintiffs Williams, Smith, Koplinski, Reid, and Wilson-Brown and that the Complaint and other papers are entirely devoid of allegations of injury to either Plaintiff Miller or Plaintiff Campbell. The claims of these Plaintiffs are thus likewise dismissed for lack of standing.

*Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003). Plaintiffs cannot meet this burden by simply asserting that the basis for their standing is "sufficiently clear" without articulating any factual support for that contention.

As it stands, there are no facts before this Court which either directly or inferentially establish that the Plaintiffs have standing to bring this lawsuit in their individual capacities. As we held in *Harris*, and affirm today, the mere status of a plaintiff as a citizen of Harrisburg is insufficient to establish standing, and the Plaintiffs have offered the Court no other facts which might confer standing to them individually. For these reasons, we will grant the Defendants' Motion to Dismiss to the extent it seeks dismissal of the remainder of Plaintiffs' Fourteenth Amendment claims.

### C. Should the Court abstain from hearing the remaining state law claim against the Defendants?

The Plaintiffs, in addition to their claims under the federal Constitution, have also asserted a claim based on Pennsylvania law, specifically citing the Pennsylvania Constitution's prohibition against "special laws" and state law precedent developing that doctrine. As *amicus curiae* Dauphin County submits, district courts, as a general rule, must abstain from accepting jurisdiction if a case involves difficult questions of state law. *Heritage Farms, Inc. v. Solebury Twp.*, 671 F.2d 743, 746 (3d Cir. 1982) (citing *Burford v. Sun Oil Co.*, 319 U.S. 315

15

(1943)). In *Burford*, the Supreme Court held that it is "particularly desirable" for a district court to decline to exercise jurisdiction "when the result is to permit a state court to have an opportunity to determine questions of state law. . . ." *Burford*, 319 U.S. at 333, n. 29. Dauphin County argues that *Burford* requires this Court to abstain from reviewing the remaining state law claim.

*Burford* requires a two-step analysis. First, the court must consider if "timely and adequate state law review is available." *Matusow v. Trans-Cnty. Title Agency, LLC*, 545 F.3d 241, 247 (3d Cir. 2008). Second, the court must query whether the case "involves difficult questions of state law impacting on the state's public policy" or whether "the district court's exercise of jurisdiction would have a disruptive effect on the state's efforts to establish a coherent public policy on a matter of important state concern." *Id.* For the reasons that follow, each of these inquiries are answered in the affirmative here, and we will accordingly decline to exercise jurisdiction over the sole remaining state law claim pursuant to *Burford*.

First, we find that multiple venues for timely and adequate state law review remain available. As the Defendants and Dauphin County note, there is an ongoing proceeding in the Pennsylvania Commonwealth Court overseeing the Act 47 receivership, and the Plaintiffs continue to have the opportunity to participate in those proceedings. *See Walker v. City of Harrisburg*, No. 569 MD 2011 (Pa.

Commw. Ct.). Notwithstanding that proceeding, nothing prevents the appropriate plaintiffs from either initiating a declaratory judgment action or seeking injunctive relief in the courts of the Commonwealth which are, undeniably, better equipped to address the difficult state law questions presented by this litigation. The first prong of *Burford* is thus satisfied as there remain several appropriate state forums in which the Plaintiffs could obtain timely and more than adequate review of their claim.

Second, we consider whether the claim involves "difficult questions" of of purely state law or policy or whether our exercise of jurisdiction would disrupt the state's efforts in establishing such law or policy. *Matusow*, 545 F.3d at 247. The first of these alternatives is overwhelmingly satisfied here. The Plaintiffs' only remaining claim involves challenging questions of state law: indeed, it asks this Court to declare existing state law and policy unconstitutional pursuant to the state constitution and state court precedent interpreting that constitution. No federal law or policy is implicated by the Plaintiffs' state law claim. Accordingly, we appropriately decline to intervene into these murky areas of state law, which we believe are best left to the excellent judgment of our able judicial colleagues on the state benches. For these reasons, we will invoke *Burford* abstention and decline to exercise jurisdiction over the Plaintiffs' claim under the Pennsylvania Constitution.

## IV. CONCLUSION

For all of the reasons articulated herein, we conclude that the Plaintiffs lack standing in both their individual and personal capacities to pursue their Fourteenth Amendment claims against the Defendants. Further, given our dismissal of all federal claims, we conclude that the *Burford* abstention doctrine compels us to abstain from reviewing the remaining state law claim, which implicates important state policies and involves issues of state law that are best determined by the courts of the Commonwealth. Accordingly, we will grant the Defendants' Motion to Dismiss (doc. 6) and dismiss the Plaintiffs' Complaint and all claims asserted therein. An appropriate order shall issue.